STREIGHT v. JUNK et al.

(Circuit Court of Appeals, Sixth Circuit. December 9, 1893.)

No. 112.

1. CREDITORS' BILL—WHO MAY MAINTAIN—CORPORATIONS.
    A creditors' bill cannot be maintained by one who has neither obtained a judgment, nor shown any reason for not doing so.
2. CORPORATIONS—RIGHTS OF STOCKHOLDERS.
    A stockholder may sue to enforce a claim of the corporation against its managing officer for diversion of funds, when its assignee in insolvency refuses to do so.
3. SAME—LACHES—PLEADING.
    A stockholder who seeks to enforce rights of the corporation against its managing officer for diversion of funds arising from an unauthorized "swapping" of checks, and who, after alleging that, being a director, he protested in writing against such acts on first learning thereof, but that they were nevertheless continued for two years, shows facts convicting himself of laches, if he fails to further aver that he was ignorant of such continuance.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

In Equity. Suit by John Streight, as a creditor and stockholder of the Junk Bros. Lumber & Manufacturing Company, to enforce claims of the corporation against S. C. Junk, its managing officer, arising from his unauthorized acts. Demurrers to the bill were sustained below, and it was then dismissed. Complainant appeals. Affirmed.

Statement by RICKS, District Judge:

The bill of complaint in this case was filed by John Streight, a citizen and resident of the state of Ohio, and suing on his own behalf, and all others interested as stockholders and creditors of the Junk Bros. Lumber & Manufacturing Company, against that company, S. C. Junk, and George W. Stainback, assignee under a general assignment for the benefit of creditors made by said company and S. C. Junk. All of said defendants are citizens of the state of Tennessee and district aforesaid.

The material averments in the bill are that the defendant company is a Tennessee corporation carrying on the business of the sale and manufacture of lumber; that during the year 1890 and other years the defendant S. C. Junk was president, and at times also general manager, of said company, and that as such officer he had charge and control especially of its financial affairs, and a general supervision of its business; that said Junk, as such officer of the company, without the knowledge or consent of or notice to any other stockholder or officer, did execute and issue corporate paper in the form of notes and bills of exchange for the purpose of "swapping" the same for similar paper made by the firm of G. W. & W. H. Bliss, when he knew said firm to be insolvent; that the complainant, being advised of said illegal acts for the first time about August, 1890, and being a stockholder and a director, did address the defendant Junk a protest in writing against such unlawful acts on his part and on behalf of the company, but that, notwithstanding such protest, said Junk continued the unlawful exchange of negotiable paper with Bliss & Co. until the fall of 1890, when said firm failed, and upon said failure, as the paper issued by complainant's company to Bliss, and by Bliss to the former company, matured, the said Junk, as president, paid off the same with the money of said corporation, the amount of the illegal paper so paid aggregating some $18,000; that because of such losses the complainant's company, after a struggle of some 18 months, viz. in May, 1892, finally succumbed, and made a

general assignment under the laws of Tennessee to the defendant Stain-back, as assignee of all its property for the benefit of its creditors. The bill further avers that the making and exchanging of the corporation paper by Junk with the Bliss Company paper was ultra vires, that the payment of such paper out of the funds of the corporation was wrongful, and that Junk is liable for such wrongs, for which he sues on behalf of himself and other stockholders. He further alleges that he requested said assignee to institute proceedings for the benefit of said corporation, its stockholders and creditors, against the defendant Junk, but he refused so to do unless a majority of the stockholders requested him to do so. Complainant alleges that this proceeding is not a collusive one to confer upon the court a jurisdiction which it otherwise would not have.

John Ruhm & Son and James Trimble, for appellant.

Steger, Washington & Jackson, Tillman & Tillman, and A. N. Grisham, for appellees.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

RICKS, District Judge, after stating the facts, delivered the opinion of the court.

The first contention necessary to consider and determine is the first ground of demurrer relied upon by the assignee of the insolvent corporation and the defendant Junk,—that the complainant cannot maintain his suit because he is not a judgment creditor. It is well settled that, when a complainant institutes a suit to subject the assets of an insolvent corporation to the payment of debts due to him and other creditors in whose behalf he sues, he must be a judgment creditor. He must have reduced his claim to a judgment, and have exhausted his remedy at law as a creditor, before he can resort to the equitable remedies of a creditors' bill to reach equitable assets in the debtor's hands. In the case of Tube-Works Co. v. Ballou, 146 U. S. 523, 13 Sup. Ct. 165, Justice Blatchford said:

"Where it is sought by equitable process to reach equitable interests of a debtor, the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction where the suit in equity is brought, the issuing of an execution thereon, and its return unsatisfied, or must make allegations showing that it is impossible to obtain such a judgment in any court within such jurisdiction."

The objection to the incapacity of the complainant to maintain this suit because he is not a judgment creditor is therefore well founded. But, according to the averments in the bill, the complainant was a shareholder in the Junk Bros. Lumber & Manufacturing Company at the time of the wrongful acts complained of, and at the time the suit was instituted. As such shareholder, and before the bill was filed, the complainant avers he requested the defendant Stainback, as the assignee of said corporation, to institute a suit in his name against the defendant Junk to make him account for his unlawful acts set forth in the bill. This the assignee refused to do. He was the proper person upon whom such a demand should have been made. By the general assignment the right to bring such a suit passed to the assignee. After the assign-

ment he represented the corporation as well as its creditors, and was authorized to sue upon corporate rights of action. Wallace v. Bank, 89 Tenn. 637, 15 S. W. 448; Williams v. Halliard, 38 N. J. Eq. 376; Brinckerhoff v. Bostwick, 88 N. Y. 52.

Under the ninety-fourth equity rule, the complainant having, in due course of procedure, made a demand on the assignee to institute this suit, and the assignee having refused, the former was entitled to bring this proceeding as he did. For these reasons we think the complainant was authorized to institute this suit as a shareholder in the insolvent corporation seeking relief for the wrongful acts complained of.

The next contention to be considered is the claim of the defendants that complainant is not entitled to any relief in this case because he was guilty of gross laches, as a director and stockholder in the insolvent corporation, in not preventing the wrongful acts set forth in his complaint. He admits in his bill that in August, 1890, he knew that defendant Junk was making and issuing negotiable bills and notes, and "swapping" them for similar paper issued by Bliss & Co. While he avers that he protested in writing against such unauthorized acts on Junk's part in 1890, he does not aver in his bill that after such protest he did not know that such illegal paper was continuously issued and used. The corporation continued in business until May, 1892, as complainant avers, but he does not aver or claim that he was ignorant of the fact that such unauthorized acts continued after his protest. He fails to disclose by proper averments in his bill such vigilance and diligence in protecting his interests as the law rightfully exacts from one in his position in said corporation, after full knowledge in 1890 of the continued unlawful acts of his associate officers and stockholders. In 148 U. S. 370, 13 Sup. Ct. 585, (Johnston v. Mining Co.,) the supreme court said:

"The law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiring, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."

By his averments of what knowledge he had of these unlawful acts, and by his failure to aver that he was ignorant of a continuation of said acts, we think the complainant has shown such laches as justifies a court of equity in denying him the relief for which he prays. He sues in this case for himself and other creditors or shareholders; but no other creditor or shareholder appears to claim any relief under his bill. He cannot recover in his own behalf, for the reasons already stated. To what extent he could participate in a recovery obtained by others authorized to maintain a suit for the same wrongs need not now be considered. All that we hold is that the appellant is not entitled to maintain this suit upon the averments in the bill disclosing laches on his part. This makes it unnecessary to consider the other assignments of error set forth.

The decree of the court below will be affirmed, for the reasons stated.